# EXHIBIT A



INTERNATIONAL CAPITAL GROUP

LOAN # ICG-8459
November 5, 2009

# MASTER LOAN AGREEMENT TO PROVIDE NON-RECOURSE STRUCTURED FINANCING

This Master Loan Agreement (hereinafter "Agreement") is hereby entered into on November 5, 2009 by and between International Capital Group, LLC, a Delaware limited liability company located in Schaumburg, IL, USA ("ICG") and Sher Banno, an individual residing in Henderson, NV ("Client").

This Agreement is made for the purpose of engaging ICG to provide non-recourse structured financing and custodial services to Client with respect to one or more publicly traded stocks to be pledged as security as part of a Stock Loan Portfolio and Financing transaction ("Stock Loan Portfolio"), the details of which are set forth in various Stock Loan Addenda which shall be incorporated into this Agreement by reference.

## 1. AUTHORITY GRANTED TO ICG

Client hereby appoints ICG as custodian of the Stock Loan Portfolio and authorizes ICG to act on Client's behalf with respect to the Stock Loan Portfolio for the purposes of:

    a. Providing or arranging non-callable and non-recourse loans.

    b. Holding cash, securities (including the Stock Loan Portfolio), or other assets on behalf of the Client as collateral.

    c. Voting shares and receiving dividends or interest on the Stock Loan Portfolio.

## 2. CLIENT REPRESENTATIONS AND WARRANTIES

Client represents and warrants the following on the date hereof and on the date of each Stock Loan Addenda:

    a. Client represents and warrants that all statements and associated documentation provided in connection with the application for any loan(s) are true and complete and do not omit any facts or information material to the evaluation of any loan request, and agrees that ICG is fully justified in relying on any such representations. Accordingly, ICG shall in all cases be fully protected in acting, or in refraining from acting, in accordance with a request of the Client and such request and any action taken or failure to act thereto shall be binding upon Client.

    b. Client represents and warrants that Client has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder. Client further warrants that, to the extent needed, this Agreement has been duly approved by all necessary corporate action of the Client, including any necessary shareholder approval, and has been executed by duly authorized officers of the Client, enforceable in accordance with its terms.

    c. Client represents and warrants that the Stock Loan Portfolio submitted as collateral is duly owned by the Client, free of any ownership claim of any third party, and is freely transferable.

ICG Initials_____            1            Client Initials_____



INTERNATIONAL CAPITAL GROUP

LOAN # ICG-8459
November 5, 2009

d. Client represents and warrants that no parties other than the parties hereto have, or shall have, any lien, claim or security interest in the Stock Loan Portfolio to be used as collateral. No financing statement under the Uniform Commercial Code is on file in any jurisdiction claiming a security interest in or describing (whether specifically or generally) the Stock Loan Portfolio or any part thereof, i.e. Client represents and warrants that Client will perform or cause to be performed, any and all such further acts as may be reasonably necessary to consummate the transactions contemplated within this Agreement.

e. In the event client is a director, office, or principal shareholder (as defined in Section 16 of the Securities Exchange Act of 1934) in any of the companies whose shares of capital stock are contained in the Stock Loan Portfolio, Client represents and warrants that he/she abides and will abide by all regulations governing hedging transactions conducted by directors, officers, or principal shareholders, including disclosure requirements and limits on transaction size. Client further represents and warrants that he/she has secured competent legal counsel certifying his/her compliance with such regulations.

f. The borrowing by Client hereunder and the execution and delivery by Client of this Agreement and other loan documents executed and to be executed by Client, including the Stock Loan Addenda, do not conflict with or result in the breach of any agreement, mortgage or similar instrument under which Client or any of his/her properties are bound, or, any law, rule, or regulation of any governmental agency applicable to him/her or said properties.

g. There is no action or proceeding pending or, to the knowledge of Client, contemplated or threatened against Client before or by any court, arbitrator, grand jury, administrative agency, governmental authority or instrumentality which contests Client's ownership in the Stock Loan Portfolio.

h. Client is not engaged in the business of extending credit for the purpose of purchasing or carrying margin stock (as defined in Regulation U issued by the Board of Governors of the Federal Reserve System), and none of the Net Loan Proceeds will be used to purchase or carry margin stock in violation of Regulation U.

## 3. LOAN AMOUNTS AND TERMS OF FINANCING

a. Loan of Net Loan Proceeds. The terms of each loan are herein contained in the respective Stock Loan Addenda to be individually signed by both parties and thereafter considered a part of and merged into this Agreement. The exact loan amounts ("Net Loan Proceeds"), interest rates, duration of loan and other applicable terms will be determined by ICG based on a number of factors that will vary from loan to loan. The Net Loan Proceeds may be distributed to designated accounts belonging to Client at one time or on sequential dates, in accordance with instructions from Client. Unless otherwise stated in Addendum under Prepayment Option, Client understands that during the loan term, prepayments are not permissible.

b. Pledge. Client hereby pledges, hypothecates and assigns to ICG, and hereby grants to ICG a security interest in and all right, title and interest in and to (all the foregoing herein called the "Pledge"), the following described property, whether now owned by Client or hereafter acquired

ICG Initials_____   2   Client Initials_____



INTERNATIONAL CAPITAL GROUP

LOAN # ICG-8459
November 5, 2009

and whether now existing or hereafter created (hereinafter collectively called the "Pledged Collateral"):

    (i) all of the shares of capital stock which constitute the Stock Loan Portfolio;

    (ii) all cash, instruments, securities or other property representing a dividend or other distribution on any of the securities which constitute the Stock Loan Portfolio, or representing a distribution or return of capital upon or in respect of the Stock Loan Portfolio, or resulting from a split-up, revision, reclassification or other like change of the Stock Loan Portfolio or otherwise received in exchange therefore, and any warrants, rights or options issued to the holders of, or otherwise in respect of, the Stock Loan Portfolio;

    (iii) all proceeds of any of the property of Client described in subsections (a) and (b) above of this Section 3(b) and, to the extent related to any property described in said clauses or such proceeds, all books, correspondence, records, and other documents.

c. Pledge Absolute. Client hereby agrees that this Pledge shall be binding upon Client and that the Pledge of the Pledged Collateral hereunder shall be irrevocable and unconditional, irrespective of the validity, legality or enforceability of the Agreement, any Stock Loan Addenda or any other loan document, the absence of any action to enforce the same, the waiver or consent by ICG with respect to any provision thereof, or any action to enforce the same or any other similar circumstances. Client hereby waives diligence, presentment, demand of payment, filing of claims with a court in the event of merger or bankruptcy of Client, any notice to require a proceeding first against Client or any other person, protest or notice with respect to the loan or any other evidences of indebtedness secured hereby or the indebtedness evidenced thereby and all demands whatsoever, and covenants that this Agreement will remain in full force and effect so long as any loans remain unpaid.

d. Lender Appointed Attorney-in-Fact. Client hereby appoints ICG as Client's attorney-in-fact, with full power of substitution, for the purpose of carrying out the provisions of this Agreement and taking any action and executing any instrument that ICG may deem necessary or advisable to accomplish the purposes hereof, which appointment is irrevocable and coupled with an interest. Without limiting the generality of the foregoing, ICG shall have the right and power to sign the name of Client to any financing statements, continuation statements or other documents under the Uniform Commercial Code relating to the Pledged Collateral and shall have the right and power to receive, endorse and collect all checks and other orders for the payment of money made payable to Client representing any dividend, interest payment or other distribution payable or distributable in respect of the Pledged Collateral or any part thereof and to give full discharge therefore.

## 4. TRANSFERRING THE COLLATERAL SHARES

Upon transferring stocks of a Stock Loan Portfolio to the designated account of ICG as collateral for the loan(s), Client gives ICG the absolute right to pledge, transfer, assign, hypothecate, lend, encumber, sell short, or sell outright those stocks, as needed to procure a loan or hedge against adverse market movements. ICG is under no obligation to sequester the Pledged Collateral apart from any other assets of

ICG Initials_____      3      Client Initials_____

425 N Martingale Rd / Suite 1540 / Schaumburg, IL 60173 USA / +1.847.278.0333 T / +1.847.276.3390 F / www.icglending.net


Case: 1:10-cv-05370 Document #: 1-1 Filed: 08/25/10 Page 5 of 12 PageID #:10

INTERNATIONAL CAPITAL GROUP

LOAN # ICG-8459
November 5, 2009

ICG, and ICG may combine the Pledged Collateral, in whole or in part, with any other assets. Client may not buy, sell, short or engage in derivative transactions related to shares in any of the companies contained in the Stock Loan Portfolio at any time (i) within 30 days after the date of this Agreement or (ii) within 30 days of loan maturity.

## 5. HEDGING THE SHARES

ICG shall confirm by fax, phone, or electronic mail the receipt and current market value of the Stock Loan Portfolio. Once confirmed, ICG shall proceed with hedge arrangements and remit to Client the Net Loan Proceeds based on the loan-to-value ration ("LTV"), as indicated in the subsequent Stock Loan Addendum (s), multiplied by the Stock Loan Portfolio value at the time of hedging. ICG shall also send to Client a statement indicating such hedged value. This remittance shall be made by wire to the account(s) designated by Client as instructed in the Client's Application, and may occur at one time or in multiple disbursements.

Alternatively, Client may allow ICG to purchase the Stock Loan Portfolio shares at the Capped Portfolio Price and have no further obligation. Repayment options are further described in Section 10 of this Agreement.

The base currency for this transaction is the US Dollar ($ or USD).

## 6. LOAN CONTINGENCIES

Client understands that ICG's ability to provide financing depends on ICG's finding appropriate counterparties and executing timely agreements. ICG will make best efforts to procure a hedge within forty-eight (48) hours. In cases of securities with markets that are not well developed, the execution of these contracts may take longer than three (3) business days. During this time, the market value of the underling asset to be hedged may drop in value affecting the amount of Net Loan Proceeds. Additionally, ICG will be responsible only for remitting funds against a hedged value when obtained. If it appears that a hedge cannot be obtained, or may take unusually long, ICG shall return all securities in the Stock Loan Portfolio to Client as it shall determine or upon request of Client.

## 7. ACCOUNT INFORMATION

ICG shall provide written instructions and account information for the transfer of the Stock Loan Portfolio. Client shall provide written instructions and account information for the transfer of the Net Loan Proceeds at closing. At such time as these disclosures are made, they shall merge into and become part of this contract.

## 8. TREATMENT OF INTEREST

Unless otherwise stated in any Stock Loan Addendum, interest payments are fixed for the term of the loan and shall be paid quarterly in arrears based upon the principal balance. Client shall remit interest payments to ICG at the address noted in Section 20 hereof, or as directed by ICG in writing.

## 9. TREATMENT OF DIVIDENDS

ICG Initials_____      4      Client Initials_____

425 N Martingale Rd / Suite 1540 / Schaumburg, IL 60173 USA / +1.847.278.0333 T / +1.847.276.3390 F / www.icglending.net



INTERNATIONAL CAPITAL GROUP

LOAN # ICG-8459
November 5, 2009

Dividends received on securities which are included in the Stock Loan Portfolio will be netted against accrued interest unless otherwise described in Addendum. Statements detailing the Stock Loan Portfolio value and loan balance shall be delivered by ICG to Client quarterly, semi-annually or annually as specified by Client.

**10. EVENTS OF DEFAULT AND REMEDIES**

    a. Events of Default. An "Event of Default" shall exist if any one or more of the following shall occur:

        (i) Failure by Client to pay the principal and accrued interest of the loan within ten (10) business days of the date when due, unless Client instructs ICG to purchase the Stock Loan Portfolio at the Capped Portfolio Price; or

        (ii) If any representation or warranty made by Client in this Agreement or in any certificate or statement furnished at the time of Closing or pursuant to this Agreement or any other loan document, including any Stock Loan Addendum shall prove to have been knowingly untrue or misleading in any material respect at the time made; or

        (iii) Default by Client in the performance or observance of any covenant or agreement contained in this Agreement or default in any other loan document which is not cured within any applicable grace period set forth therein, if any; or

        (iv) A final judgment for the payment of money in excess of $1,000,000 shall be rendered against Client, and such judgment shall remain undischarged for a period of sixty (60) days from the date of entry thereof unless within such sixty day period such judgment shall be stayed, and appeal taken there from and the execution thereon stayed during such appeal; or

        (v) If Client shall make a general assignment for the benefit of creditors or consent to the appointment of a receiver, liquidator, custodian, or similar official of all or substantially all of his properties, or any such official is placed in control of such properties, or Client admits in writing his inability to pay his debts as they mature, or Client shall commence any action or proceeding or take advantage of or file under any federal or state insolvency statute, including, without limitation, the United States Bankruptcy Code, seeking to have an order for relief entered with respect to him or seeking adjudication as a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, liquidation, dissolution, or other relief with respect to him or his debts; or

        (vi) The Pledge shall cease at any time after its execution and delivery and for any reason to create a valid and perfected first priority security interest in and to the Pledged Collateral or the validity or priority of such security interest shall be contested by Client or by any other person; or any of the other loan documents shall at any time after their execution and delivery for any reason cease to be in full force and effect or shall be declared null or void, or the validity or enforceability thereof shall be contested by Client or by any other person.

ICG Initials_____         5         Client Initials_____



INTERNATIONAL CAPITAL GROUP

LOAN # ICG-8459
November 5, 2009

(vii) The Fair Market Value of the Collateral shall at any time be less than eighty percent (80%) of the amount of the loan amount and Borrower does not cure in cash or stock equivalent such discrepancy within three (3) Business Days of receiving notice of s u c h event.

b. Rights. Upon the occurrence of an Event of Default, the loan, together with any accrued and unpaid interest thereon, shall be immediately due and payable without notice or demand, presentment, or protest, all of which are hereby expressly waived. Upon notice to Client, by certified mail, of the occurrence of an Event of Default (but except as provided below), Client may inform ICG of Client's intent not to repay loan balance plus accrued interest, choosing instead to forfeit the securities which constitute the Stock Loan Portfolio to ICG with no contingent liability.

At any time after the date first above written, ICG shall thereupon have the rights, benefits, and remedies afforded to it under any of the loan documents with respect to the Stock Loan Portfolio and may take, use, sell or otherwise, encumber or dispose of the securities contained within the Stock Loan Portfolio as if it were ICG's own property. Client agrees that ICG may or may not proceed, as it determines in its sole discretion, with any or all other rights, benefits, and remedies which it may have against Client.

Anything herein to the contrary notwithstanding, (but except as provided below), ICG agrees, for itself, its representatives, successors, endorsees and assigns, that: (i) neither Client, nor any representative, successor, assign or affiliate of Client, shall be personally liable for the Net Loan Proceeds; and (ii) ICG (and any such representative, successor, endorsee or assignee) shall look to the Stock Loan Portfolio and/or the other instruments of security that secure the loan for payment of the Net Loan Proceeds, and will not make any claim or institute any action or proceeding against Client (or any representatives, successors, assigns or affiliates of Client) for any deficiency remaining after collection upon the Stock Loan Portfolio, provided, however, and notwithstanding the foregoing, Client is and will remain personally liable for any deficiency remaining after collection of the pledged collateral to the extent of any loss suffered by ICG, or its representatives, successors, endorsees or assigns, if such loss is caused by Client based in whole or in part upon:

    (i) Damages arising from any fraud, misrepresentations or the breach of any material covenant or agreement; and/or

    (ii) Damage to the Stock Loan Portfolio resulting from gross negligence or intentional acts; and/or

    (iii) Failure to pay taxes or other property-related liens; and/or

    (iv) Damages arising from the failure to comply with any and all laws.

## 11. CLIENT OPTIONS AT END OF LOAN TERM

At the end of the term of the loan, Client shall pay off the principal balance of the Loan and all accrued and unpaid interest and fees that may then be due. Within three (3) U.S. business banking days of receipt

ICG Initials_____      6      Client Initials_____



INTERNATIONAL CAPITAL GROUP

LOAN # ICG-8459
November 5, 2009

of Client's payment, ICG shall return to Client that number of shares comprising Client's Collateral, adjusted as follows:

    a. If the Portfolio Market Value (i.e. the amount obtained by multiplying the number of shares of stock which constitute the Stock Loan Portfolio times the closing price of that stock on the day of determination) is equal to or less than the Capped Portfolio Price (as defined in the Stock Loan Addendum), ICG shall return the same number of shares as were pledged by Client at the time the Loan was made, adjusted for any stock-splits, reverse splits, mergers, spin-offs, or similar changes affecting the Client's position as beneficial owner of the securities;

    b. If the Portfolio Market Value is greater than the Capped Portfolio Price, ICG shall return a number of shares that have a market value equal to the Capped Portfolio Price and any Upside Sharing. Or if ICG and Client decides, ICG shall return all Collateral Shares and Client will have a cash expense immediately due and payable to ICG. The expense due to ICG shall be calculated by taking the difference between the Portfolio Market Value and Capped Portfolio Price and applied to the (if any) Upside Sharing Formula in Addendum.

In either case, the closing price of the shares which are included in the Stock Loan Portfolio on the third Friday of the month of expiration of the term of the loan shall serve as the reference price for calculating the Portfolio Market Value at that time.

In the alternative, within sixty (60) days prior to the end of the loan term, Client may inform ICG in writing of its intent not to repay loan balance and accrued interest, choosing instead to forfeit all securities representing the Collateral to ICG, and ICG shall have no further recourse beyond Collateral and one (1) quarterly interest payment in which to collect any difference between the loan amount and the value of the Collateral from Client upon such forfeiture.

Further in the alternative, within sixty (60) days prior to the end of the loan term, Client may inform ICG in writing of its desire to renew this Agreement for an additional period of time as provided in Section 13 below.

## 12. NOTICE AT END OF LOAN TERM

Client agrees to inform ICG of Client's decision either to pay all amounts due under this Agreement or to renew the loan no less than thirty (30) days prior to the end of the specified loan term. Should Client desire not to repay the loan, Client shall notify ICG of its intention to forfeit the Stock Loan Portfolio no less than ten (10) days prior to the end of the specified loan term. ICG shall send a reminder notice to Client prior to these deadlines at Client's official address as set forth herein regarding Client's loan termination options, and shall otherwise make best efforts to accommodate Client's request in the event Client is for any reason unable to meet these time restraints. Should ICG be unable to contact Client to determine Client's intent, ICG shall automatically liquidate the Stock Loan Portfolio to cover principal plus accrued interest. Proceeds, if any, over and above this amount will be held until ICG receives instructions from Client or Client's successors or assigns.

ICG Initials_____    7    Client Initials_____

425 N Martingale Rd / Suite 1540 / Schaumburg, IL 60173 USA / +1.847.278.0333 T / +1.847.276.3390 F / www.icglending.net



INTERNATIONAL CAPITAL GROUP

LOAN # ICG-8459
November 5, 2009

### 13. RENEWAL OPTIONS AT END OF LOAN TERM

At maturity, Client may, at Client's own discretion, renew this Agreement for a period of time no fewer than two (2) years nor greater than twenty (20). This Agreement may be renewed multiple times for varying loan terms, subject to the following conditions:

   a. If the market value of the Stock Loan Portfolio is greater than all amounts due under this Agreement and Client elects to renew, Client will receive new Net Loan Proceeds based on the appreciated Stock Loan Portfolio value at the time of renewal. Client must then pay ICG any outstanding loan balance and Cap Differential Amount, keeping the excess. Under such circumstances, Client shall not pay any renewal fee.

   b. If the market value of the Stock Loan Portfolio is equal to or less than loan principal plus accrued interest and Client elects to renew, Client need not pay ICG any outstanding loan balance, but must instead pay a renewal fee to ICG. Upon the first such renewal, the renewal fee shall be guaranteed to be 4.25% of the original market value of the Stock Loan Portfolio. Subsequent renewal fees shall be based on market conditions existing at the time and negotiated by the parties.

   c. Renewal interest rates and other loan terms may differ from the original Agreement, the exact terms of which will be set forth on updated Stock Loan Addenda and determined by market conditions at the time.

### 14. ADDITIONAL ASSURANCES TO CLIENT AT END OF LOAN TERM

ICG agrees to return, at the end of the loan term, the securities which constitute the Stock Loan Portfolio as set out and defined in the Addendum(s), upon Client's satisfying in full all outstanding loan balances, including accrued interest and any Cap Differential Amount.

### 15. ASSIGNMENT

ICG may assign or pledge this Agreement as necessary to perform normal business functions. Client agrees to assist in completing documents, if necessary, to affect such assignment or to otherwise complete this transaction. Client may not assign its rights or interest in this Agreement without the prior written consent of ICG which consent may be withheld for any reason.

### 16. PROPER LAW

This Agreement shall be interpreted in accordance with the laws of State of Delaware, unless both parties mutually agree on another jurisdiction.

### 17. MODIFICATION BY MUTUAL CONSENT

This Agreement may be modified by subsequent Stock Loan Addendum(s) with the mutual written consent of both parties.

ICG Initials_____           8           Client Initials_____



INTERNATIONAL CAPITAL GROUP

LOAN # ICG-8459
November 5, 2009

### 18. SEVERABILITY

To the extent any provision of this Agreement is prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition, or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

### 19. BINDING EFFECT

All of the terms of this Agreement, as amended from time to time, shall be binding upon, inure to the benefit of and be enforceable by the respective heirs, successors, and assigns of ICG and Client.

### 20. EXECUTION IN COUNTERPARTS

This Agreement and any joint written direction such as Addenda to follow may be executed in counterparts, which when so executed shall constitute one and same agreement or direction.

### 21. OFFICIAL ADDRESSES

Client's official address, telephone and facsimile numbers for notifications regarding this Agreement and related loan transactions are:

> Sher Banno
> 1380 Ruby Sky Court
> Henderson, NV 89052
> Telephone: 702.269.0820
> Facsimile:
> Email:

ICG's official address, telephone and facsimile numbers for notifications regarding this Agreement and related loan transactions are:

> International Capital Group, LLC
> 425 N Martingale Rd
> Suite 1540
> Schaumburg, IL 60173 USA
> Telephone: +1 847.278.0333
> Fax: +1 847.276.3390
> Toll Free: +1 866.942.9310
> Email: docs@icglending.net

ICG Initials_____        9        Client Initials_____



INTERNATIONAL CAPITAL GROUP

LOAN # ICG-8459
November 5, 2009

## 22. ARBITRATION CLAUSE

This Agreement is subject to the arbitration rules of the National Association of Securities Dealers, Inc., ("NASD"). Arbitration is used to resolve disputes between two parties. Because controversies involving financial services firms often involve complicated issues, arbitration forums were conceived by the Securities and Exchange Commission (SEC), the New York Stock Exchange, Inc. (NYSE), and the NASD to provide an alternative dispute resolution mechanism for investors that is usually more efficient and less costly than court litigation. In the event of arbitration in respect of this Agreement or any Stock Loan Addendum:

1. Arbitration is final and binding on all parties.

2. The parties are waiving their right to seek remedies in court, including the right to jury trial.

3. Pre-arbitration discovery is generally more limited than and different from court proceedings.

4. The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.

5. It should be noted that none of the undersigned parties, including ICG's representatives, members, managers, officers, employees and agents are guarantors of any security account or transaction.

The undersigned hereby agree that all claims or controversies, and any related issues, that may arise between the above named parties (including ICG's representatives, members, managers, officers, employees and agents) concerning any investment or planning advise or recommendation with respect to any subject matter; any order or transaction, the conduct of ICG or its representatives, members, managers, officers, employees and agents; the construction, performance, or breach of any common law or statutory duty; or the violation of any federal or state law of any nature, or the continuation, performance or breach of this or any other Agreement between the parties, whether entered into before, on, or after the date of this Agreement, shall be determined by arbitration before a panel of independent arbitrators set up by the NASD. The Client may also designate the American Arbitration Association or any other industry forum only to the extent expressly provided as an alternative under the securities laws of the Client's state of residence. Client must notify ICG in writing of the arbitration designation within five (5) days of Client's receipt of written demand for arbitration. If designation is not received in five (5) days, ICG is authorized to make such designation on Client's behalf. The undersigned understand that judgment upon any arbitration award may be entered in any court of competent jurisdiction.

No person shall bring a punitive or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a punitive class action; or who is a member of a punitive class who has not opted out of the class with respect to any claims encompassed by the punitive class action until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) the Client is excluded from the class by the court. Such forbearance to enforce an

ICG Initials_____        10        Client Initials_____



INTERNATIONAL CAPITAL GROUP

LOAN # ICG-8459
November 5, 2009

agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.

## 23. ENTIRE AGREEMENT

This Agreement and the Addendum(s) hereto constitute the entire Agreement between the parties relating to the funding of a structured credit facility and sets forth in its entirety the obligations and duties of the respective parties.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written.

International Capital Group, LLC
a Delaware Corporation

Sher Banno

_____

_____
Sher Banno

By:_____

Its:_____

Please send signed and initialed copies to:
International Capital Group, LLC

+1.847.276.3390 facsimile or email docs@icglending.net

**REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK**

ICG Initials_____           11           Client Initials_____