IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL CAPITAL GROUP, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | |
| v. | | Case No. 10-cv-05370 |
| HILLARD HERZOG and SHER BANNO, | | Judge Guzman |
| Defendants. | | |

### AFFIDAVIT OF TODD J. BERGERON

Pursuant to 28 U.S.C. §1746, I declare as follows:

1. I am one of the principals of Plaintiff International Capital Group, LLC ("ICG") and I have personal knowledge of all facts set forth in this declaration and would testify to the same.

2. ICG is a Delaware corporation with its principal place of business in Schaumburg, Illinois. Hillard Herzog ("Herzog") is an individual with his residence at 1380 Ruby Sky Court, Henderson, Nevada, 89052. Sher Banno ("Banno") is an individual with her residence at 1265 Autumn Wind Way, Henderson, Nevada, 89052. Herzog and Banno are business associates.

3. ICG is in the business of lending money to individuals with loans that are secured by the pledge of shares of stock, usually low value stocks.

4. Herzog first contacted me through a lending agent, Greg Traina. Beginning in late 2009, ICG began making small loans to Herzog pursuant to written loan agreements. One of those agreements is attached as Exhibit A.

5. On November 3, 2009, ICG entered into the Master Loan Agreement (the "Agreement") with Herzog and Banno. The Agreement was predicated on a mutual

1

understanding that any amounts loaned to Herzog or Banno would be secured by shares of Herzog's business, Bergamo Acquisition Corporation ("BGMO"). A true and correct copy of the Agreement is attached as Exhibit B.[1]

6. Section 10(a)(vii) of the Loan Agreement provides that an "Event of Default" occurs when the value of the collateral drops below eighty percent of the loan amount, and the borrower does not cure the deficiency within three business days.

7. Section 10(b) provides that, upon an Event of Default, the entire loan amount, including accrued interest will become due and payable without notice or demand.

8. On November 9, 2009, Herzog signed an Addendum to the Agreement, titled Addendum A-1 for Hillard Herzog ("Addendum A-1, Herzog"), which specifically referenced the Agreement. A true and correct copy of Addendum A-1, Herzog is attached as Exhibit C.

9. Banno signed an Addendum to the Agreement, titled Addendum A-1 for Sher Banno ("Addendum A-1, Banno"), and faxed a signed copy to ICG on December 23, 2009. A true and correct copy of Addendum A-1, Banno is attached as Exhibit D.

10. In January, 2010, ICG advanced a total of $119,672.92 to Banno. Those amounts are reflected in the BGMO Transaction Summary, which is attached as Exhibit E.[2]

11. In early January, 2010, Herzog contacted Greg Traina to request advance funding from ICG. ICG advanced $50,000 to Herzog on January 8th and another $50,000 to Herzog on January 13, 2010. At that time, Herzog represented to me that he would transfer sufficient shares

---

[1] Despite my best efforts, I have been unable to locate an executed version of the Agreement. The signed Addendum B-1 to the Loan Agreement acknowledges the amount advanced pursuant to the Loan Agreement and is attached as Exhibit G.

[2] The attached BGMO Transaction Summary includes transactions relating to prior loan agreements between Herzog and ICG. Thus, the only transactions that are relevant to the Agreement are transactions after January, 2010.

2

13047589v.1

of BGMO stock to secure the loan. A true and correct copy of a February 25, 2010 email that I sent to Greg Traina referencing the January 8th loan is attached as Exhibit F.

12. On or about February 15, 2010, Herzog requested additional financing from ICG through Greg Traina. I responded to Traina on March 1, 2010, at which time I refused to provide additional financing to Herzog until ICG received full collateral for the existing loan amounts. A true and correct copy of my March 1, 2010 email to Traina is attached as Exhibit G.

13. On or about March 17, 2010, ICG agreed to advance Herzog $215,000 pursuant to an Addendum B-1 to the Agreement ("Addendum B-1"). The Addendum specifically references the Agreement and states that "ICG has advanced $225,000 to Herzog to date." In return for the additional $215,000 in funding, Herzog guaranteed "ICG free-trading shares of BGMO on or before May 1, 2010 equaling the total amount advanced ($440,000) plus 20% equaling $528,000." A copy of Addendum B-1 is attached as Exhibit H.

14. The collateral that Herzog transferred was worth less than eighty percent of the loan amount, and ICG could not effect a good closing on the loan because the value of the collateral did not adequately secure the $440,000 loan. A true and correct record of our sale of the BGMO stock is reflected in the BGMO Transaction Summary.

15. Herzog and Banno were required to transfer additional collateral to ICG to secure the amounts that they received from ICG. They failed to do so, placing them in default.

16. On or about June 14, 2010, Herzog came to my office in person to assure me that he could repay the loan. Herzog showed me a number of documents from foreign companies, which clearly showed that he had invested the loan amounts in false letters of credit and did not have funds to repay ICG. A true and correct copy of an email I received from Herzog following our conversation is attached as Exhibit I.

3

13047589v.1

17. ICG has liquidated all of the collateral that Herzog and Banno eventually transferred to reduce the total amount that Herzog and Banno currently owe to them. The BGMO Transaction Summary attached as Exhibit E shows the amount of collateral liquidated and the current amount owed under the loan. The current amount owed is $165,433.58. Herzog and Banno also promised ICG an additional 20% return to ICG for the loan. Therefore, the total amount owed by Herzog and Banno to ICG is $198,520.29.

18. ICG continues to hold certain collateral of Herzog and Banno -- a million shares of restricted stock which it cannot sell. ICG will return this collateral to them after the amount owed ICG is satisfied.

Dated: January 21, 2011.

_____
Todd J. Bergeron,
International Capital Group

SUBSCRIBED AND SWORN TO
BEFORE ME THIS 21ST DAY
OF JANUARY, 2011.

_____
NOTARY PUBLIC

OFFICIAL SEAL
SASHI KUMAR
Notary Public - State of Illinois
My Commission Expires Feb 03, 2014

4

13047589v.1